And we'll move to our next case. Thank you. We'll move to our next case this morning, United States v. Miller. Mr. Gillen. Thank you, Chief Judge Sykes, and may it please the court. My name is Sam Gillen, and I represent the appellant, Robert Miller, in this matter. This court should reverse the district court's denial of Miller's motion to suppress the firearm in this case, and it should do so for three basic reasons. First, by seizing and pressing Miller's keys without a warrant, officers conducted a Fourth Amendment search under Correa Concepcion. Second, that Fourth Amendment search was unreasonable because it does not fall within a specifically established and well-delineated exception to the Fourth Amendment warrant requirement. Third, evidence of the gun should have been suppressed because it was fruit of the unlawful search. And if it's all right with Your Honors, I'd like to focus in on the second point because it seems to be where the parties differ the most. And so in determining whether a Fourth Amendment search was unreasonable, it's important to bear in mind the longstanding Supreme Court precedent that warrantless searches are per se unreasonable, and that's only subject to a few key phrase here, specifically established and well-delineated exceptions. Here, the United States offers three potential exceptions to the warrant requirement, and none apply. And I think the most troubling is the first one, which is the United States reads the key Seventh Circuit precedent, Concepcion and Correa, as permitting warrantless searches whenever the privacy interests of the person being searched are sufficiently small in view of law enforcement interests. And so I think the issue here is the United States cites to Correa for that proposition, which in turn cited to Concepcion. And Concepcion said, this is a close paraphrase, but something to the effect of, how much cause is required for a given search depends on how deeply they invade the zone of privacy. And for that proposition, Concepcion baldly cited an earlier case, U.S. v. Chavez, and that case was actually a Caesars case. And so there's kind of two issues there. The first of which is that, without explanation, it's broadening this proposition for Caesars cases to all Fourth Amendment cases. But more fundamentally, it violates the longstanding Supreme Court rule that warrantless searches, in order to be reasonable, must fall within a certain exception to the Fourth Amendment. So that's why Concepcion and Correa, which both involved using keys of an arrestee, must be read as invoking the search incident to arrest exception in order to comply with the per se rule. And the insurance balancing exception of the sort contemplated by the United States contravenes the very idea of being well delineated. It's a rule that will require an ad hoc judicial determination after the fact regarding whether the privacy interests involved are sufficiently weighty. In the normal course, that is a determination being made by a neutral magistrate before the fact, and not by officers. It also contravenes the policy behind the per se rule, as stated in United States v. Katz. Again, it bypasses the neutral determination by a judge and leaves individuals' rights secure only in the hands of officers who have every incentive to find circumstances warranting a warrantless search. Moving on to the next exception, the United States also invokes the automobile exception to the warrant requirement. Here, that quite plainly doesn't apply because the search was of Miller's keys, not his car. I'd point out, firstly, that Correa characterized the search there, which was the case where DEA officers were clicking a garage door opener. It characterized the search there as, quote, an interrogation of the garage door opener's code, not a search of the garage, a search of the key item. I'd also point out, Your Honors, that keys don't necessarily have to be for a car. They could be to a storage unit, a diary, all sorts of things, each of which have their own attendant privacy interests involved. And so I think it's important to leave that determination and weighing of interest to the neutral magistrate before the fact, rather than leaving it to officers who, again, have every incentive to find circumstances warranting a warrantless search. I'd also point out that characterizing this as a search under the automobile exception doesn't comply with the policy behind that either. Generally, with cars, there's a lesser expectation of privacy because they're pervasively regulated. You have to have a registration, a license, et cetera. The same isn't true for keys. Also, cars are readily mobile. Cars, by their nature, are meant to move places. Keys might be readily mobile in the sense that you can put them in your pocket and walk away, but they're no more readily mobile than, say, a wallet, a cell phone, things that would unequivocally not be considered readily mobile. Finally, I'd address the United States' exigent circumstances argument. They offer this even though it was not warranted. That's your third, right? Exigent circumstances? Yes, Your Honor. You've got to get some point here. Your time's clicking on it. You've got to get to independent source. Okay, Your Honor. Right. That's the basis of the decision. The district court relied upon the independent source doctrine. The district court. Judge Shadid, did he not? I think he relied on that in the alternative, Your Honor. Right. So let's talk about that. Okay. I just want to make sure we get the benefit of your perspective on that. Understood, Your Honor. So I point out there that there's an unbroken causal chain here between when the officers found out that the car was Miller's, they then circled back and investigated later and saw a gun, and based on these two key facts, they decided to seek a warrant. And I note that the warrant here was not to investigate my client who had been shot in the face. It cited the Illinois Felon in Possession statute. And so in order to have probable cause for felon in possession, you need to know that there's a firearm and you need to know that there's a felon who possessed the firearm. Officers would not have known that the car and therefore the gun was Miller's without having done the unlawful search and clicked his key. What about the DMV, the record search? Your Honors, they could have. Well, we know in fact they did it. They did after they had already confirmed that the car was his by virtue of clicking it. So it's kind of just a covering their bases, so to speak. We don't necessarily know that they would have gone through that procedure had they not known whose car it was. To the extent that we want to say that, oh, well, officers definitely would have in the normal course, well, they had every opportunity at the trial court level to present testimony saying, okay, well, if we had not clicked the clicker, this is what we would have done. We would have run the – Don't you think it would have been a gap in their search warrant application? Don't you think the judge issuing the search warrant would have said, I just got a very basic question. Whose car is it? Who is it registered to? Well, I don't think there's – That's probably why they included it because it's one of the first steps that's done. I think the fundamental – I'd return to the warrant being for the unlawful possession statute. They wouldn't have had a motivation to run the DMV thing and search. Sure they would. There was blood in the car, and it was shot up. They had every reason to search the car once it was impounded. Whether or not it was going to form the basis of a felon in possession charge against your client or evidence of other crimes, they were following the leads that were forensically in the car itself. Your Honor, I think we're kind of substituting what we think would have hypothetically happened for what should have been in the first instance testimony by the officers saying this is what we would have done. So I don't think we can take it as a guarantee that they would have, absent the knowledge that the car and the Gunn was Miller's, ended up searching the car for evidence related to the initial crime. Now before they pushed the key fob, they knew they had a guy that was shot and hurt pretty badly, right? Shot in the face. Yes, Your Honor. Okay. They saw the bullet holes on the side of the Crown Victoria. They put the flashlight in there and they saw the blood in the car. Yes, Your Honor. Okay. It's inconceivable to me that they would, what, have him taken away in an ambulance and then they would just leave the scene? Again, Your Honor, I'd just say that we don't necessarily know what the officers would have done. Admittedly, maybe a little unlikely that they would have just left the car. But again, that was... It would have been unheard of. They were going to impound that car. It's evidence of a crime. The other thing you have here, in keeping with that comment, is you've got the, I think you've got an inventory search issue in the back of this. That's not in any of these opinions. But they're not, inconceivable may be an understatement. They're not going to go about their patrol work and leave the Crown Victoria sitting in the middle of a street in these circumstances and just abandon it. There's no way. So that car is going to the station house almost no matter what. I mean, either the station house or the auto pound. One of the two. Right? I mean... I mean, it's fairly likely, but I'd just turn again to the same point, that we don't necessarily know that that's the case. And I see that I'm running low on time, Your Honors. Thank you. For these reasons, the Court should reverse. Thank you. Thank you. Mr. Kinstra. May it please the Court. Good morning, Your Honors. Jeff Kinstra for the United States. The District Court correctly denied the motion to suppress, and there are four independent grounds on which this Court could affirm. I'm happy to answer your questions on any of them, but I'll start where we left off, which is that the independent source doctrine is really an inescapable ground for affirmance here. The District Court did expressly rely on it. The two questions there are, did the challenged activity affect the judge's decision to issue the warrant, and did it affect the officer's decision to seek the warrant? On the first question, probable cause here existed before the officers even pressed the key fob, as Your Honors have observed, even before then. They had observed... Of course, they were called to the scene of a shooting. It's a very dangerous incident. There are five bullet holes in the side of this car. They look inside, and there's blood all over the passenger seat. And next to it, of course, there is the defendant who is bleeding from gunshot wounds. So his connection to the car and the car's connection to the shooting, even more importantly, is really inescapable. The officers knew that already even before using the key fob, and those facts were all set forth in the warrant affidavit. So the warrant sets forth probable cause to search for the shooting. As opposing counsel notes, the warrant did say that it was investigating a felon possession offense, but that's really not dispositive. The warrant only has to provide probable cause. Here it was supported by probable cause. And even if the officer cited a different or even the wrong statute, that wouldn't undermine the warrant itself. And so the next question then is, did this affect the officer's decision to seek the warrant? For many of the same reasons, it's not only unfathomable that the officers would not have sought the warrant, but the district court found, as a matter of fact, that the key fob is not why they sought the warrant. What the court said at the top of page 3 of its ruling is that they sought the warrant. What led to the discovery of the evidence was their observations of the bullet holes and blood in the car and the victim next to the car suffering from gunshot wounds. The defendant suggests that there is some sort of evidentiary gap because there wasn't testimony at a hearing about what the officers would have done, but there was a stipulation which put forth all the facts before the district court, and there were also body cam videos. And I think those videos are really revealing because it shows that multiple officers at different times during this investigation observed these same facts and audibly remarked the same observation, something like, oh, he was in the passenger seat, or he was in the car, or the key is probably his, as Officer Mark said, before he actually picked up the key and pressed the button. So to the extent that the officers sought the warrant because the defendant had some connection to this car, the officers already plainly knew that the defendant was likely connected to this car. Beyond the facts I've noted already, it was the only car nearby, and he has a key in his hand, which suggests that he was about to or had just access to the car. So the facts really plainly show that the officers were going to search this car, they had the probable cause to do it, and so even if there were questions about the key fob itself, the independent source doctrine would fully support the denial of the motion to suppress, and the defendant can't show that the district court committed clear error in finding that the officers would have sought the warrant anyway. As to whether any violation occurred, I'll begin with the key fob itself. And this court's precedent already establishes that the use of a key for the sole purpose of learning what the key corresponds to does not constitute an unreasonable search so long as it doesn't reveal any further information about the interior or contents of whatever the key corresponds to. And the reason, as this court has repeatedly recognized in Concepcion and then again in Thompson and then again in Correa, is the limited privacy interests. And there are really two dimensions to that. The first is that a key is only capable of conveying a very limited piece of information. It can't say anything about the interior or contents. It can only say basically what does it unlock. And second, that's a piece of information that a person has a very limited privacy interest in in the first place. Now, Concepcion and Correa involved apartments and garages, and even then the court said that because that information is readily discoverable, that a person has very little information and merely the identity of their apartment or garage or apartment building. Now, that applies with even greater force here because just like in those cases, the key fob can only identify the car to which it corresponds. And a person has much less interest in privacy in the identity of the car that they own then in their garage or their apartment. Cars as a class, of course, are pervasively regulated. They have to be registered with the state. The state maintains these records. Cars have to bear license plates, which make it very easily accessible for officers to determine who owns them. And so the privacy interest here is much less than in this court's prior cases, and the key is no more revealing than in those cases. So this court's precedent really controls. The defendant tries to distinguish them as applying only the exception for searches in an incident to arrest, but that's just plainly not what those cases say. Concepcion said that the privacy interest is so small that officers don't need probable cause. In Thompson, the court again said that the privacy interest is so small that officers don't need probable cause or warrant to conduct that activity. In Correa, the court said that pressing the button was reasonable because the searches revealed only an address, and the defendant had no reasonable expectation of privacy. So this court simply was not applying the exception for searches in an incident to arrest. I note that the defendant suggests that the rule this court has established invites all sorts of different line-drawing problems, and that's really not the case because this court's rule is already very clear. It's very well delineated, and it's longstanding as well. Again, it only applies to the use of a key, and only then for the limited purpose of determining what the key corresponds to. So this isn't a wide-ranging inquiry. It's a very narrow factual situation that's been the court's law for 30-plus years now, and the defendant hasn't shown the sorts of difficulties that he posits that that rule would create. The other limiting factor of the rule is that it can only apply when officers have lawful access to both the key and whatever it corresponds to. So the rule against unlawful seizures almost has more work to do here, but the defendant hasn't claimed in this case that there's an unlawful seizure, so that's waived, and there wasn't because this was a key that the officers had removed from the defendant's hand while searching him for bullet holes, essentially. It was lying on the grass, and they picked it up. As to the automobile exception, really the key there is that, first of all, there is probable cause, and then second, a person has no greater expectation of privacy in the key than the car itself, and the defendant suggests that keys aren't inherently mobile, and that's a little bit suspect, but cars certainly are, and a key only conveys information if it's used in combination with a car. So the car's inherent mobility would defeat the officer's ability to determine what the key corresponds to, just the same as it would impair the officer's ability to search the contents of the car. And so the reasons for the automobile exception apply fully here, and the Eighth Circuit has expressly held that in Cowen. The defendant acknowledges that on page 3 of his reply brief. So a contrary holding by this court would require creating a new circuit split. Not only is that unjustified, but it would be incorrect. So the automobile exception applies and supplies an alternate additional basis for the affirmance. And last, with exit and circumstances, I just note this is obviously a life-threatening emergency. Someone who had been in the car had been shot. There were ten bullets fired, only five of which were in the car, so that could have left multiple different victims. Officers had an interest in learning if it was the defendant who had previously been in that car or someone else, because if it was someone else, there was someone who was likely in distress, having suffered a gunshot wound. And the very modest step of using the key fob to determine if perhaps that was the defendant's car, if it was the defendant who had been in that passenger seat that was filled with blood, served that purpose. So for all those reasons, the government believes that the district court correctly denied the motion to suppress, and unless your honors have any questions, I would ask this court to refer. All right, thank you very much. Thank you. Mr. Killen, rebuttal. You had used all your time, but if you've got something to say in conclusion, you can have an extra minute. Anything else to say? Not in conclusion, I just wanted to address. Sure. I just wanted to take a second, since opposing counsel addressed exit and circumstances, to give our side on that as well. The problem here is there's no objectively reasonable basis for the officers to believe that there was an ongoing emergency sufficient to justify using Miller's keys. Officers, there were several officers on the scene. They had already cleared the scene with flashlights. There was no apparent trail of blood, a door ajar, or anything like that to indicate that there was somebody else here. And so for that reason, I would again say that that exception is not applied. Thank you, Your Honor. All right, thank you very much. Our thanks to both counsel. The case is taken under advisement.